UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) PAWNEE NATION OF OKLAHOMA, On Its Own Behalf and On Behalf of its Tribal Members Similarly Situated,<br><br>   Plaintiff,<br><br>vs.<br><br>1) EAGLE ROAD OIL LLC,<br>2) CUMMINGS OIL COMPANY, and<br>3) JOHN DOES 1 through 25,<br><br>   Defendants. | Case No.  18-cv-263-JED-JFJ |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff the Pawnee Nation of Oklahoma ("Plaintiff" or the "Nation"), for itself and for its tribal members similarly situated, and against Eagle Road Oil LLC and Cummings Oil Company ("Defendants"), allege:

### NATURE OF ACTION

1. By disposing of fracking wastewater deep into the earth, Defendants introduced contaminants into the natural environment that caused an adverse change to it in the form of unnatural seismic activity. In other words, due to Defendants' pollution of the environment they caused the human induced earthquakes at issue in this case.

2. This is an action to recover Plaintiff's and its tribal members' damages proximately caused by Defendants' pollution of the environment within and around Pawnee, Oklahoma through the disposal of fracking wastewater with injection wells, which are the pollutants.

3. The Nation and its members seek damages in the form of the following:

   a. Physical damages to real and personal property;

   b. market value losses to the real property; and,

   c. punitive damages.

## PARTIES

4. Plaintiff Pawnee Nation of Oklahoma ("Plaintiff" or "Nation") is a federally-recognized Indian tribe. The Nation has approximately 3,200 enrolled members from four confederated bands of Indians (the Chaui, Kitkehahki, Pitahawirata and Skidi). The Nation's headquarters are located on the Pawnee tribal reserve at Pawnee, Oklahoma.

5. By filing this action, the Nation does not waive its sovereign immunity and does not consent to suit as to any claim, demand, offset, or cause of action of the United States, its agencies, officers, agents or any other person or entity in this or any other court.

6. The Nation is the protector of its tribal members under the doctrine of *parens patriae* and has standing to assert the claims of its members as their representative.

7. Defendant Eagle Road Oil LLC ("Eagle Road") is a citizen of Oklahoma. It owns conducts oil and gas operations in this County, and more specifically, owns and operates the wastewater disposal well at issue in this case. Its principal place of business is at 321 South Boston, Suite 300, Tulsa, Oklahoma 74103.

8. Defendant Cummings Oil Company ("Cummings") is a citizen of Oklahoma. It conducts oil and gas operations in this County, and more specifically, owns and operates the

wastewater disposal wells at issue in this action. Cummings has its principal place of business at 5400 N. Grand Blvd., Suite 100, Oklahoma City, Oklahoma 73112.

9. John Does 1 – 25 are other Oklahoma oil and gas companies that have engaged in injection well operations in and around Pawnee, which have also contributed to the earthquakes and resulting damages to Plaintiff and the Class members.

10. Eagle Road, Cummings, and John Does 1-25 are collectively referred to in this petition as "Defendants."

## JURISIDICTION AND VENUE

11. Jurisdiction in this Court is proper.

12. This Court also has personal jurisdiction over Defendants as they are citizens of Oklahoma, do substantial business in the State of Oklahoma and within this District, and further, operate the wastewater disposal wells at issue within this District.

13. Most of the damaged real properties at issue are on Indian or Tribal Lands held in trust by the United States or have restricted status.

14. Venue is proper in this Court as a substantial part of the events giving rise to this claim occurred here, and Plaintiff is a citizen and resident of Pawnee County.

## FACTUAL ALLEGATIONS

15. In recent years, thousands of earthquakes have occurred in Oklahoma.

16. In fact, Oklahoma is the most seismically active state in the continental United States.

17. Scientists have tied these earthquakes to the disposal of wastewater from fracking operations, which the oil and gas industry uses to release trapped oil and gas.

18. Over the years, the oil and gas industry has issued public statements to hide the seismic problems it is creating, and in fact continued a mantra that their operations did not cause earthquakes.

19. In truth, Oklahoma's earthquakes over the past five or so years have been caused by the oil and gas industry's disposal of fracking related waste. Some have termed these earthquakes as "induced," "man-made," "human-made," or "frackquakes."

20. The waste fluids generated from fracking are mostly disposed of by injecting the wastewater fluids back into the earth under extreme pressure in what are usually called wastewater disposal wells or injection wells. This process of pollution causes earthquakes, and indeed, have caused the earthquakes shaking Oklahoma since at least 2011.

21. In fact, the number of earthquakes in Oklahoma has increased more than 300-fold, from a maximum of 167 before 2009 to 5,838 in 2015.

22. As the number of earthquakes has increased, so has their severity. For example, the number of magnitude 3.5 earthquakes has increased fifty-fold from 4 in 2009 to 220 in 2015. See below:



23. These waste-induced earthquakes have toppled historic towers, caused parts of houses to fall and injure people, cracked basements, and shattered nerves, as people fear there could be worse to come.

24. On March 28, 2016, and revised on June 17, 2016, the United States Geological Survey ("USGS") published a study quantifying these risks. It found that the earthquake risks in Oklahoma have risen rapidly as a result of deep disposal of production wastes. Oklahoma earthquake risks are now the highest in the nation. Maps included in the report show a broad swathe of the State of Oklahoma has a 5 to12% likelihood of a highly damaging earthquake in the next year. Petersen, M.D., Mueller, C.S., Moschetti, M.P., Hoover, S.M., Llenos, A.L., Ellsworth, W.L., Michael, A.J., Rubinstein, J.L., McGarr, A.F., and Rukstales, K.S., 2016, 2016 One-year

seismic hazard forecast for the Central and Eastern United States from induced and natural earthquakes: U.S. Geological Survey Open-File Report 2016–1035, 52 p., http://dx.doi.org/10.3133/ofr20161035.

25. On September 3, 2016, these scientists' prediction that a more damaging earthquake to Oklahoma was coming proved to be true.

26. On that day, a magnitude-5.8 earthquake shattered Pawnee, Oklahoma. The earthquake's epicenter was about 15 km northwest of the town of Pawnee.

27. This was the largest earthquake that had ever hit Oklahoma.

28. A magnitude-5.8 earthquake is a big one. Oklahoma Geological Survey's Director Jeremy Boak said, "Any time you have a big earthquake like that, you worry about the aftershocks," Boak said. "How big they'll be, how many there will be."

29. All segments of Oklahoma's government, from the Governor to the Director of OGS, agree that Pawnee's 5.8m earthquake was induced by Defendants' wastewater disposal operations and from the injection wells they operate nearby.

30. The 5.8m earthquake near Pawnee on September 3, 2016, was not a naturally occurring earthquake, or an act of God. Instead, the Defendants' pollution of the environment caused it, and the other earthquakes that followed.

31. In the area around Pawnee, there were at least 41 shocks involving magnitude-2.5+ earthquakes before the end of September, 2016.

32. These quakes ranged in magnitude from 2.5m to 3.6, and have all been identified by USGS and shown in the following table:

| TIME | MAG | PLACE |
|---|---|---|
| 2016-09-26T09:09:05.500Z | 2.5 | 13km NW of Pawnee, Oklahoma |
| 2016-09-23T08:28:17.800Z | 3 | 12km NW of Pawnee, Oklahoma |
| 2016-09-18T21:30:52.300Z | 2.7 | 5km N of Pawnee, Oklahoma |
| 2016-09-16T23:02:23.400Z | 2.5 | 13km NW of Pawnee, Oklahoma |
| 2016-09-16T22:28:50.700Z | 2.7 | 10km NW of Pawnee, Oklahoma |
| 2016-09-12T21:39:14.500Z | 3 | 14km NW of Pawnee, Oklahoma |
| 2016-09-12T09:57:28.900Z | 2.6 | 8km NNW of Pawnee, Oklahoma |
| 2016-09-12T05:54:12.700Z | 3 | 8km NNW of Pawnee, Oklahoma |
| 2016-09-11T04:57:16.300Z | 2.9 | 12km NW of Pawnee, Oklahoma |
| 2016-09-10T17:26:45.800Z | 2.5 | 13km NW of Pawnee, Oklahoma |
| 2016-09-09T20:28:01.100Z | 2.6 | 10km NW of Pawnee, Oklahoma |
| 2016-09-08T01:54:16.100Z | 2.5 | 11km NW of Pawnee, Oklahoma |
| 2016-09-07T11:17:39.300Z | 2.6 | 11km NW of Pawnee, Oklahoma |
| 2016-09-07T03:11:55.100Z | 2.7 | 13km NW of Pawnee, Oklahoma |
| 2016-09-04T18:08:11.600Z | 2.7 | 10km NNW of Pawnee, Oklahoma |
| 2016-09-04T16:37:08.100Z | 2.8 | 11km NW of Pawnee, Oklahoma |
| 2016-09-04T12:56:04.900Z | 3 | 11km NW of Pawnee, Oklahoma |
| 2016-09-04T12:16:46.800Z | 2.9 | 12km NW of Pawnee, Oklahoma |
| 2016-09-04T08:48:26.500Z | 2.5 | 13km NW of Pawnee, Oklahoma |
| 2016-09-04T05:44:34.400Z | 2.5 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-04T03:15:56.400Z | 3.1 | 11km NW of Pawnee, Oklahoma |
| 2016-09-03T23:56:36.600Z | 3 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T23:17:26.500Z | 2.6 | 7km N of Pawnee, Oklahoma |
| 2016-09-03T18:07:04.400Z | 2.5 | 8km NNW of Pawnee, Oklahoma |
| 2016-09-03T15:31:40.900Z | 3.4 | 11km NW of Pawnee, Oklahoma |
| 2016-09-03T15:25:00.500Z | 2.9 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T14:56:32.000Z | 2.6 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T14:47:04.200Z | 3.3 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T14:35:30.800Z | 2.6 | 13km NW of Pawnee, Oklahoma |
| 2016-09-03T14:07:16.900Z | 2.5 | 9km NW of Pawnee, Oklahoma |
| 2016-09-03T14:05:49.200Z | 2.6 | 9km NW of Pawnee, Oklahoma |
| 2016-09-03T13:49:37.500Z | 2.5 | 9km NW of Pawnee, Oklahoma |
| 2016-09-03T13:06:06.700Z | 2.6 | 13km NW of Pawnee, Oklahoma |
| 2016-09-03T12:58:37.800Z | 3.6 | 13km NW of Pawnee, Oklahoma |
| 2016-09-03T12:57:36.200Z | 2.6 | 12km NW of Pawnee, Oklahoma |
| 2016-09-03T12:39:48.800Z | 2.7 | 11km NW of Pawnee, Oklahoma |
| 2016-09-03T12:36:18.000Z | 2.5 | 11km NW of Pawnee, Oklahoma |
| 2016-09-03T12:32:02.300Z | 2.6 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T12:21:25.200Z | 2.7 | 10km NNW of Pawnee, Oklahoma |
| 2016-09-03T12:18:54.000Z | 2.6 | 9km NNW of Pawnee, Oklahoma |
| 2016-09-03T12:16:22.200Z | 3.3 | 3 9km NNW of Pawnee, Oklahoma |

33. Defendants' pollution of the environment around Pawnee, through their disposal of fracking wastewater with injection wells, caused the 5.8m earthquake on September 3rd and all of the other seismicity shown in the table above.

34. Moreover, the quakes around Pawnee continued into October and November, 2016. In fact, there have been eleven more earthquakes, and another substantial earthquake of 4.5m shook the areas around Pawnee on November 2, 2016.

35. The following table shows the earthquakes near Pawnee in October and November, 2016, including the 4.5m earthquake:

| TIME | MAG | PLACE |
| --- | --- | --- |
| 2016-11-14T14:41:50.710Z | 3.4 | 15km W of Cleveland, Oklahoma |
| 2016-11-05T15:40:31.330Z | 2.9 | 2km E of Pawnee, Oklahoma |
| 2016-11-05T09:39:43.990Z | 3.7 | 13km ESE of Pawnee, Oklahoma |
| 2016-11-02T15:10:43.700Z | 3.1 | 12km ESE of Pawnee, Oklahoma |
| 2016-11-02T08:57:02.590Z | 2.8 | 12km ESE of Pawnee, Oklahoma |
| 2016-11-02T04:26:54.200Z | 4.5 | 14km ESE of Pawnee, Oklahoma |
| 2016-10-29T06:06:02.580Z | 3.3 | 9km NW of Pawnee, Oklahoma |
| 2016-10-21T16:50:22.000Z | 2.6 | 12km NW of Pawnee, Oklahoma |
| 2016-10-19T12:04:51.630Z | 2.7 | 11km NW of Pawnee, Oklahoma |
| 2016-10-09T12:23:05.100Z | 3.7 | 11km NW of Pawnee, Oklahoma |
| 2016-10-01T10:58:31.300Z | 2.9 | 8km NNW of Pawnee, Oklahoma |

36. All of these earthquakes were also caused by Defendants' pollution of the environment around Pawnee, through their disposal of fracking wastewater with injection wells, and caused the Nation to suffer more than $400,000.00 in physical and market value damages to its historical government buildings.

## **CLASS ALLEGATIONS**

37. Plaintiff realleges each of the preceding paragraphs, and by this reference incorporates each such paragraph as though set forth here in full.

38. Plaintiff brings this action, on behalf of itself and a representative of its tribal members that are similarly situated, as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a)(b)(1), and (3).

39. The Class that Plaintiff seeks to represent (the "Class") is defined as follows:

   a) members of the Pawnee Nation of Oklahoma;

   b) owning a home or business on Indian Lands held in trust or subject to federal oversight or restriction, and located within the boundaries of the State of Oklahoma (hereafter, the "Class Area");

   c) during the dates of seismic activity within the Class Area between September 3, 2016 to present (the "Class Period");

   d) excluded from the Class are Defendants and their officers and directors, and the judge presiding over this action and his/her immediate family members.

40. Plaintiff reserves the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

41. This action is brought and properly may be maintained as a class action pursuant to FRCP 23 and satisfies the requirements of its provisions.

### *Numerosity*

42. Media outlets have reported hundreds of homes and businesses were damaged just by the 5.8m earthquake striking the area on September 3, 2016.

43. These human-made earthquakes are continuing in the Class Area, and thus, more properties are likely to suffer damages.

44. The Class Area includes multiple properties subject to federal oversight and restriction sufficient to meet the minimum standard of Rule 23(a)(1) numerosity.

45. The Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable, and therefore, the resolution of their claims through the procedure of a class action will be to the benefit of the parties and the Court.

### *Commonality*

46. Plaintiff's claims raise issues of fact or law that are common to the members of the putative Class, and meet the requirement of Rule 23(a)(2).

47. These common questions include, but are not limited to:

   (a) Whether Defendants' disposal well operations within the Class Area caused earthquakes in the Class Area;

   (b) whether these induced earthquakes caused damage to the personal and real property of Plaintiff and the members of the Class;

   (c) whether Defendants owed a duty to the Plaintiff and the members of the putative Class;

   (d) whether Defendants' conduct amounted to a nuisance;

   (e) whether Defendants' conduct is an ultra-hazardous activity;

   (f) whether Defendants' operations were negligently performed;

   (g) whether Defendants caused a trespass;

   (h) whether Plaintiffs and the members of the putative Class have suffered damages proximately caused by Defendants' wastewater disposal operations; and

   (i) whether a judgment including punitive damages is appropriate.

### *Typicality*

48. Plaintiff's claims are typical of the claims of the other members of the Class they seek to represent because at bottom, all of the claims center upon whether Defendants' wastewater injection operations have caused the seismicity within the Class Area during the Class Period.

49. Thus, the prerequisite found in Rule 23(a)(3) is also met.

### *Adequacy*

50. Plaintiff is interested in the outcome of this litigation and understands the importance of adequately representing the Class.

51. Plaintiff will fairly and adequately protect the interests of the Class sought to be certified.

52. Plaintiff is an adequate representative of the Class because it has no interests that are adverse to the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel competent and experienced in handling class-action and complex tort litigation, which are also qualified to adequately represent the Class.

53. To such an end, the requirement in Rule 23(a)(4) is met.

### *Predominance*

54. Questions of law or fact common to the members of the Class predominate over questions affecting only individual members, because the overarching issue is whether Defendants' wastewater disposal operations caused the seismicity at issue.

### *Superiority*

55. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predicate issues relate to Defendants' wastewater injection

operations, actions and activities, and whether these activities pose a nuisance, are an ultra-hazardous activity, were negligently performed, or caused trespasses. The focus of this action will be on the common and uniform conduct of Defendants in conducting their wastewater injection operations during the Class Period and within the Class Area.

56. Absent class action relief, the putative Class Members would be forced to prosecute possibly more than one-hundred similar claims. Such an event would cause tremendous amounts of waste of judicial resources, but the prosecution of these claims as a class action will promote judicial economy.

57. The prosecution of separate actions by individual members of the Class would also create a risk of:

    a. inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants; and

    b. adjudications with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

58. Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

59. Thus, the requirements of FRCP 23(b)(1) and (3) are met.

## **CLAIMS FOR RELIEF**

## **CLAIM I**

## **ABSOLUTE LIABILITY**

60. Plaintiff and the Class hereby re-allege and incorporate the foregoing Paragraphs as if fully set forth herein, word-for-word.

61. Defendants' actions described above are ultrahazardous activities that necessarily involve a risk of serious harm to a person that cannot be eliminated by the exercise of the utmost care and is not a matter of common usage.

62. Eagle Road conducted wastewater disposal operations at two locations near Pawnee. These operations contributed to the 5.8m earthquake near Pawnee on September 3, 2017, as well as the other seismicity identified in this petition.

63. Eagle Road's disposal wells at issue are known as the Eagle Road Norman SWD 1-27 and Eagle Road Carter 1-5SWD disposal wells. These two wells combined, historically based upon public records at the Oklahoma Corporation Commission ("OCC"), for a monthly average of wastewater injection into Oklahoma's Arbuckle formation of about 191.5 thousand barrels. In terms of gallons, Eagle Road injected more than 8 million gallons of wastewater into the Arbuckle – a month, under Pawnee.

64. Cummings also conducted substantial wastewater disposal operations near Pawnee, and which contributed to the 5.8m earthquake near Pawnee on September 3, 2017, as well as all the other seismicity identified in this petition.

65. The Cummings disposal well at issue is known as the Cummings Rogers 1-13D disposal well. Historically, from public data available at the OCC, the Rogers 1-13D disposal well injected more than 126,000 barrels of wastewater into the Arbuckle formation near Pawnee on a monthly basis. In terms of gallons, Cummings disposed of about 5.3 million gallons of waste into the Arbuckle formation under Pawnee monthly.

66. Since 2015, it has been admitted by Oklahoma's government that all of Oklahoma's seismicity since 2009 is due to wastewater injection operations into Oklahoma's Arbuckle formation, which resides very deep below Oklahoma's surface. Indeed, in early-August 2015,

more than a year before the 5.8m Labor Day weekend quake near Pawnee, Governor Mary Fallin, the Oklahoma Secretary of Energy and Environment Michael Teague, and the Governor's Coordinating Counsel on Seismic Activity acknowledged a "direct correlation" between Oklahoma's seismicity and wastewater disposal.

67. Eagle Road's and Cummings' millions of gallons of wastewater disposal operations into the Arbuckle under Pawnee created a high degree of risk of some harm to persons, commercial buildings, homes, and/or the chattels of others in the areas within and surrounding Pawnee.

   a. It is known that earthquakes can cause substantial injuries to people, and in fact prior to the 5.8m earthquake near Pawnee, Sandra Ladra of Prague, Oklahoma, sued two oil and gas companies for substantial personal injuries to her knees when rocks on her fireplace fell during a 5.7m wastewater disposal induced earthquake near Prague hit in November of 2011.

   b. Moreover, after the Governor, the Secretary of Energy and Environment, and the Seismicity Council acknowledged the "direct correlation" between Oklahoma's seismicity and fracking wastewater disposal, several schools in Oklahoma began to educate their students on earthquake preparedness, and also implemented safety drills – further support that wastewater induced seismicity involves a substantial risk of harm.

   c. Oklahoma's seismicity, all of which since 2009 has been determined to be induced by wastewater injection, has caused millions of dollars in damages to properties around the state. High profile cases involve over $2 million in damages to St. Gregory's iconic building Benedictine Hall, and the Lions Club's building in Cushing. The Prague induced quakes of November 2011 toppled one of St.

   Gregory's Benedictine Hall's four towers. And the Cushing induced earthquakes of November 2016 resulted in the total destruction of the Lions Club's century-old building in Cushing.

 d. In Pawnee, for example, Defendants' induced earthquakes have totaled the home of Johnny and Janice Bryant, and have caused more than $400,000.00 in damages to government buildings of the Pawnee Nation.

 e. Further, Defendants' wastewater disposal operations have caused substantial personal injury.

 f. The former seismologist for the State of Oklahoma at Oklahoma Geological Survey, Dr. Austin Holland, has testified in other human-induced earthquake litigation in Oklahoma, that disposal of fracking wastewater into the Arbuckle formation below Oklahoma is unreasonably dangerous, will cause earthquakes, and thus, in an ultrahazardous activity.

 g. Plaintiff has also retained a geophysicist that has opined that Defendants' wastewater operations are ultrahazardous.

 h. There is an obvious high degree of risk of some damage to persons, homes, and other properties due to wastewater disposal operations that create earthquakes, and the likelihood that harm will result from induced seismicity is great.

68. There is an inability to eliminate the risks detailed above with the exercise of reasonable care as to the Defendants' actions of disposing of millions of gallons of wastewater in the Arbuckle and near a fault line – an induced earthquake is inevitable and is a known consequence to those that dispose of these wastes in this manner, scientifically. Even Defendants' compliance with government licensing and/or regulations does not eliminate the risk of causing

seismicity and resulting harm to persons and property, and moreover, is no bar to the application of absolute liability principles under Oklahoma law.

69. Wastewater disposal operations, especially into Oklahoma's Arbuckle and near faults, are not a matter of common usage, and indeed, are analogous to activities routinely considered as ultrahazardous such as blasting, demolition operations, the use, transport, or storing of hazardous chemicals, and the controlled burning of fields. All of these activities involve inherent risks, and are certainly not "normal to the average man."

70. It is inappropriate to dispose of millions of gallons of fracking wastewater into Oklahoma's Arbuckle formation, especially in areas where there are fault lines nearby. Such activity unavoidably involves unreasonable risk.

71. While fracking wastewater disposal is necessary part of oil and gas exploration and is of a value to the community, such is outweighed by its dangerous attributes – especially when such operations involve such huge volumes of wastewater, disposed of deep into the Arbuckle formation, and near fault lines, and that result in devastating seismicity.

72. As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiff and the Class have suffered damages of at least hundreds of thousands of dollars, to which Defendants are strictly liable.

73. As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiff and the Class have also suffered market losses to their buildings, and damages to their personal property.

## CLAIM II

## NEGLIGENCE

74. Plaintiff and the Class hereby re-allege and incorporate the foregoing Paragraphs, as if fully set forth herein, word-for-word.

75. The Defendants owed a duty to Plaintiff and the Class to use ordinary care and not to operate or maintain their injection wells in such a way as to cause or contribute to seismic activity. Defendants, experienced in these operations, were well aware of the connection between injection wells and seismic activity, and acted in disregard of these facts.

76. As a direct and proximate result of these facts, omissions, and fault of the Defendants, the Plaintiff and the Class have suffered injuries reasonably foreseeable to the Defendants in the form of property damages, and damages to personal property.

## CLAIM III

## PRIVATE NUISANCE

77. Plaintiff and the Class re-allege and incorporate the foregoing Paragraphs, as if fully set forth herein, word-for-word.

78. Defendants' conduct constitutes a private nuisance.

79. Plaintiff and the Class have property rights and privileges regarding the use and enjoyment of their buildings, homes, land and personal property. Defendants' actions and operations as described above have unlawfully and unreasonably interfered with those rights and privileges.

80. Plaintiff and the Class have suffered harm and damages because of Defendants' creation of a nuisance, including:

    a. damages to their personal and real property;

  b.  interference with their use and enjoyment of property;

  c.  annoyance, discomfort and inconvenience on their property caused by Defendants' nuisance; and,

  d.  diminution of property value.

## CLAIM IV

## TRESPASS

65. Plaintiff and the Class re-allege and incorporate the foregoing Paragraphs, as if set forth herein, word-for-word.

66. Plaintiff and the Class are lawfully entitled to possession of their properties.

67. Defendants, without the permission or consent of Plaintiff and the Class, and without legal right, intentionally engaged in activities that resulted in concussions or vibrations entering Plaintiff's and Class members' land and properties. Such unauthorized invasion of their properties constitutes a trespass.

68. Because of Defendants' trespass, Plaintiff and the Class have suffered damages, including:

  a.  damages to personal and real property;

  b.  interference with their use and enjoyment of property;

  c.  annoyance, discomfort and inconvenience on their property caused by Defendants' trespass; and,

  d.  diminution of real estate property value.

## PUNITIVE DAMAGES

69. The Defendants' actions, in knowingly causing seismic activity as a result of their injection well operations, constitute wanton or reckless disregard for public or private safety, and

are thus subject to a claim for punitive damages, for which Plaintiff and the Class seek in an amount sufficient to punish the Defendants and to deter them from such conduct in the future.

## DEMAND FOR JURY TRIAL

70.     Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

i.     judgment against each Defendant awarding damages for injury to real and personal property (for physical damage and market loss), loss of use and enjoyment of property, and annoyance, discomfort and inconvenience on property caused by and continuing by the conduct of the Defendants in an amount to be proven at trial;

ii.    punitive damages;

iii.   pre-judgment and post-judgment interest; and,

iv.    all other relief to which Plaintiff and the Class are entitled or that the Court deems just and proper.

DATED:  May 17, 2018                         Respectfully Submitted,

*/s/ Curtis "Muskrat" Bruehl*
Curtis "Muskrat" Bruehl, OBA No. 19418
**THE BRUEHL LAW FIRM, PLLC**
14005 N. Eastern Ave.
Edmond, OK 73013
Ph.   (405) 938-3434
Fax: (405) 509-6268
Email: cbruehl@bruehllaw.com

-and-

Scott Poynter, AR Bar #90077
**Poynter Law Group**
400 W. Capitol Ave., Suite 2910
Little Rock, AR 72201
Ph.   (501)251-1587
Fax: (501) 244-2614
Email: scott@poynterlawgroup.com
(**Pro hac vice application anticipated**)

>Curt D. Marshall, NY Bar #2524841
>**Weitz & Luxenberg, PC**
>700 Broadway
>New York, NY 10003
>Tel: (212) 558-5500
>Fax: (212) 344-5461
>Email: cmarshall@weitzlux.com
>(***Pro hac vice* application anticipated**)
>
>*Attorneys for Pawnee Nation of Oklahoma*